UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SMITH,                                  :
          Plaintiff,                :
                                  :
          v.                        :           No. 5:23-cv-2166
                                  :
IDEAL CONCEPTS, INC.,                           :
          Defendant.                :

**O P I N I O N**

**Defendant's Motion to Dismiss, ECF No. 9 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                   **November 27, 2023**
**United States District Judge**

I.      **INTRODUCTION**

Michael Smith was employed by Ideal Concepts, Inc. from December of 2021 until

January 27, 2023.  During his tenure, he became aware of certain company practices he believed

to be unlawful or improper.  These included company officers accessing the protected health

information of its customers while outside of the United States, fraudulently classifying its

employees as Allentown residents to qualify for a tax credit, and laying off employees in

violation of the WARN Act.  As he became aware of these practices, Smith reported their

impropriety to various corporate officials.  His complaints were ignored, and he was eventually

terminated.  Now, he brings claims arising under the False Claims Act, the Pennsylvania

Whistleblower Law, and common law wrongful discharge.  Ideal Concepts has filed a Motion to

Dismiss each of the claims.  For the reasons set forth below, the Motion to Dismiss is granted in

part and denied in part.

II.     **BACKGROUND**

The factual allegations, taken from the Amended Complaint, *see* Am. Compl., ECF No. 9, are as follows:

Michael Smith was employed as the Director of Sales for Ideal Concepts, Inc. from December of 2021 until January 27, 2023. *Id*. ¶¶ 11, 12. Part of Ideal Concepts' business model includes selling Medicare and/or Medicaid plans for which it receives funding from the Commonwealth of Pennsylvania. *Id*. ¶¶ 9, 16. In March of 2022, Smith became aware of certain business practices which he believed to be unlawful and improper. *Id*. ¶ 13. The first was that Ideal Concepts' Chief Executive Officer, John Pequeno, moved to Cape Verde, Africa where he continued to perform Medicare related work and accessed protected health information ("PHI"). *Id*. ¶ 14. Smith avers that accessing PHI outside of the United States violates the Centers for Medicare & Medicaid Services' ("CMS") regulations. *Id*. Around this time, Smith also became aware of Ideal Concepts' Business Intelligence Reporter, last name Jolla, doing the same while living in Poland. *Id*. ¶ 15. In addition to violating the CMS, this practice increased the risk that Ideal Concepts' customer PHI would be intercepted. *Id*. ¶ 16.

In late March of 2022, Smith reported this information to Susan Galloup, Ideal Concepts' Director of Human Resources. *Id*. ¶ 19. In response, Galloup told Smith that she "turns her head and looks the other way" because its "[Pequeno's] company and he can do what he wants." *Id*. Smith then made the same complaints about Jolla and Pequeno's actions to Ideal Concepts' Compliance Manager, Health Sales Director of Under Sixty-Five, Sales Strategy Leader, Administrative Service Director, and Pequeno himself. *Id*. ¶ 20. Nothing was changed in response. *Id*. ¶ 22.

In the months that followed, Pequeno relocated overseas again.  In June of 2022, Pequeno relocated to Portugal where he continued to access PHI.  *Id*. ¶ 23.  Smith reported this.  *Id*. ¶ 24. In September of 2022, Pequeno relocated to Brazil where he continued to access PHI.  *Id*. ¶ 27. Smith again reported this.  *Id*. ¶ 28.

In January of 2023, Smith became aware of two other company practices he deemed fraudulent and improper.  The first was that Ideal Concepts "fraudulently classified its employees across the country as Allentown residents in order to qualify for a tax credit to build an office building in Allentown."  *Id*. ¶ 29.  Smith reported this to Ideal Concepts' Office of Human Resources.  *Id*.  The second was that Pequeno intended to lay off more than fifty (50) employees without notice.  *Id*. ¶ 31.  Smith understood this to be a violation of the WARN Act, *see* 29 U.S.C. § 2101 et seq., and reported such to Galloup.  *Id*. ¶ 32.  In January of 2023, Smith complained about the improper PHI access and the fraudulent tax classification once a week to Galloup.  *Id*. ¶ 30.  On January 27, 2023, Smith's employment was terminated.  *Id*. ¶ 35.

On August 22, 2023, Smith filed the instant Amended Complaint.  In Count I, Smith asserts a claim of Retaliation in Violation of 31 U.S.C. § 3730(h) of the False Claims Act.  In Count II, Smith asserts unlawful retaliation in violation of Pennsylvania Whistleblower Law 43 P.S. § 1421 et seq.  In Count III, Smith asserts Common Law Wrongful Discharge in Violation of Pennsylvania Public Policy.  On September 5, Ideal Concepts filed a Motion to Dismiss for Failure to State a Claim.  *See* ECF No. 11.  The Motion is fully briefed and ready for disposition. For the reasons that follow, Count I is dismissed without prejudice and Ideal Concepts' motion to dismiss Counts II and III is denied.

### III.    LEGAL STANDARDS

#### A. Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).  The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B. False Claims Act Retaliation – Review of Applicable Law**

Generally, the False Claims Act ("FCA") was enacted "to protect the funds and property of the Government from fraudulent claims." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). To broaden that effort, the FCA "empowers a person, or 'relator,' to sue on behalf of the United States those who defraud the government, and to share in any ultimate recovery." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 296 (3d Cir. 2016). To protect these whistleblowing employees from backlash, the FCA includes an anti-retaliatory provision. In pertinent part, that provision provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). Thus, to plead a claim of FCA retaliation, the claimant must show that 1) they were engaged in protected conduct and 2) that they were discriminated against because of the protected conduct. *United States ex rel. Ascolese v. Shoemaker Constr. Co*., 55 F.4th 188, 194 (3d Cir. 2022).

Under the text of the statute, protected conduct encompasses either: 1) a lawful act done to further an FCA action; or 2) "other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). Respectively, these are referred to as the "FCA litigation prong" and the "'other efforts' prong." *Ascolese*, 55 F.4th at 194. "Congress's addition of the 'other efforts' prong through 2009 and 2010 amendments reflects Congress's intent to expand FCA's anti-retaliation protections." *Hall v. Abington Mem'l Hosp*., No. CV 22-2429, 2023 WL 6216526, at *3 (E.D. Pa. Sept. 25, 2023).

Notwithstanding their expanded scope, retaliation claims must still have some nexus to a viable FCA violation. *See Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 108 (3d Cir. 2002) ("If there is no way that [Plaintiff's] conduct of informing [Defendant's] administrators about the allegedly fraudulent application could reasonably lead to a viable FCA action, then the whistleblower provision provides him no protection."); *see also United States ex rel. Petras v. Simparel, Inc.,* 857 F.3d 497, 508 (3d Cir. 2017) (holding that the plaintiff's retaliation claim failed because the underlying FCA claim was not viable); *Hall*, 2023 WL 6216526 at \*8 (holding that an FCA retaliation claim must "identify a nexus between the plaintiffs' conduct and a potential FCA violation.")

Viability does not require that a claimant develop a winning FCA action. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001). Nor is it required that the claimant is even "contemplating FCA litigation." *Ascolese*, 55 F.4th at 191. However "'an employee's investigation of nothing more than [their] employer's non-compliance with federal or state regulations' cannot form the basis of a viable claim under the FCA" and thus cannot sustain an action for retaliation. *See United States v. Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, No. 2:19-CV-01220-CCW, 2022 WL 14851121, at \*3 (W.D. Pa. Oct. 26, 2022) (quoting *Hutchins*, 253 F.3d at 187-88).

## C. Pennsylvania Whistleblower Act – Review of Applicable Law

"Generally speaking, the Pennsylvania Whistleblower Law precludes a public body from taking any adverse employment action against an employee in retaliation for the employee's good faith report of wrongdoing or waste." *Scrip v. Seneca*, 191 A.3d 917, 925 (Pa. Commw. 2018). Section 1423 of the Whistleblower Law ("WBL"), in relevant part, provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or

privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a). "[T]o establish a cause of action under 43 P.S. § 1423(a), [a claimant] must allege that prior to discharge, he had made a good faith report of [wrongdoing or] waste committed by the [defendant] and was discharged in reprisal for that report." *Lutz v. Springettsbury Twp.*, 667 A.2d 251, 253 (Pa. Commw. 1995).

### D. Public Policy Wrongful Termination – Review of Applicable Law

The public policy exception to Pennsylvania's at-will employment doctrine "may be applied under narrowly limited circumstances where (1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) a statute prohibits discharge." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 577 (Pa. Super. 1999).

## IV. LEGAL ANALYSIS

### A. False Claims Act Retaliation

The Amended Complaint puts forward an unclear theory of FCA retaliation. In construing the claim, the Court focuses on three specific averments. The first is that Ideal Concepts "continued to receive federal funds for Medicare plans sold by its employees, despite the fact that Pequeno and Jolla continually engaged in the aforementioned violation of CMS regulations." Am. Compl. ¶ 16. The second is that "[i]f the Federal Government learned about Defendant's unlawful performance of Medicare related work and accessing of PHI from outside the U.S., it would not have continued to permit the Defendant to receive federal funding." *Id.* ¶ 17. The third and final is that Ideal Concepts retaliated against Smith "for having reported [its] ongoing *fraudulent misrepresentation* to the Federal government." *Id.* ¶ 38 (emphasis added). A

fair reading of these averments seems to suggest that compliance with CMS' PHI regulations is a condition of federal funding.  This is a conclusion without any factual averments to support it. While Smith claims that Pequeno and Jolla's access of PHI outside of the United States was unlawful, he points to no express law, rule, or regulation to that effect.

In this regard, the Court finds *Hall v Abington Memorial Hospital* analogous to the instant matter.  *See Hall*, 2023 WL 6216526.  *Hall* concerned two plaintiffs who worked as polysomnographers in the defendant's Sleep Center.  *Id.* at *1.  The Sleep Center conducted studies on patients, many of whom received coverage from Medicare or Medicaid which was reimbursed by the CMS.  *Id.* at *5.  Their work required the use of airway pressure machines, some of which were later recalled by the FDA.  *Id.*  at *1.  Despite the recall, the defendant continued to use the machines on patients.  *Id.* The plaintiffs objected to this practice as unsafe and were eventually fired.  *Id.* at *1-2.

The plaintiffs filed suit, asserting an FCA retaliation claim which argued that the defendant unlawfully retaliated against them for their objections and efforts to recall the machines.  *Id.* at *2.  In dismissing the claim, the district court held that the complaint failed to explain how the continued use of the recalled machines "would render a claim made to CMS for the sleep study fraudulent" because the complaint failed "to identify an express violation of an FDA or CMS regulation or contract" and did not put "forward an implied false certification theory."  *Id.* at *6.  More simply, "the plaintiffs' FCA retaliation claim fail[ed] to identify a nexus between the plaintiffs' conduct and a potential FCA violation."  *Id.* at *8.  Here, as in *Hall*, the Amended Complaint fails to explain how the purported CMS violation renders any claim made to the federal government fraudulent or a potential FCA violation.  Without a nexus to a viable FCA violation, Smith's conduct is not protected by the FCA's retaliation provision.

Nor does the Amended Complaint put forward an implied certification theory of liability. A failure to disclose noncompliance with a statutory, regulatory, or contractual requirement can form the basis of an implied certification theory of liability under the FCA.  In *Universal Health Servs., Inc. v. United States*, the Supreme Court held that:

> the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Universal Health Servs., Inc. v. United States,* 579 U.S. 176, 190 (2016).  The second condition, or materiality condition, requires that the "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Id*. at 192.  "[P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id*. at 194–95.

Smith fails to fill out this sort of claim.  Again, the Amended Complaint does not explain how Pequeno and Jolla's access of PHI outside of the United States constitutes regulatory noncompliance as he cites no CMS regulation.  Further, Smith offers no facts which would tend to suggest that such noncompliance would *materially* affect the Government's decision to pay Ideal Concepts if it became aware of the company's purported violations.  Thus, Smith has failed to plausibly allege that the purported CMS violations could have defrauded the federal government under an implied certification theory of liability.

Accordingly, Smith has failed to state a claim for retaliation under the FCA.  Count I is dismissed without prejudice.[1]

**B. Pennsylvania Whistleblower Law**

Regarding the PWL claim, Ideal Concepts argues that: 1) it is not a public body or employer within the meaning of the PWL; 2) it did not engage in wrongdoing or waste under the terms of the statute; 3) Smith has failed to plead a causal connection between his complaints and termination.  The Court addresses each in turn.

*1. Whether Ideal Concepts is a Public Body Within the Meaning of the PWL*

The plain terms of the Whistleblower Law limit its scope to the wrongdoing or waste of a "public body" or "other employer as defined in [the] act."  43 P.S. 1423(a).  Smith alleges that Ideal Concepts is an employer and agent of a public body because it receives Medicaid funding from the Commonwealth of Pennsylvania.  Am. Compl. ¶ 9.  Ideal Concepts disagrees.

This dispute is not unique to the case at hand.  Recently, in the matter of *Gloukhova v. CSL Behring LLC,* the court engaged in a broad survey of intermediate Pennsylvania Court and Federal District Court approaches to this very issue.  *See Gloukhova v. CSL Behring LLC*, 2022 U.S. Dist. LEXIS 201124 (E.D. Pa. Nov. 4, 2022) (collecting cases).  There, the court explained that there exists "[t]wo parallel, but diametrically opposed, approaches . . . as to whether Medicaid funding on its own may establish an entity as a 'public body' potentially liable under the PWL."  *Id*. at *4.

The first approach is the *Denton* approach which plainly construes the purportedly unambiguous language of the statute.  Under its terms, a "public body" encompasses "*[a]ny*

---

[1]     *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

*other body* which is created by Commonwealth or political subdivision authority or *which is funded in any amount by or through Commonwealth* or political subdivision authority or a member or employee of that body." 43 P.S. § 1422 (emphasis added). Thus, "'[t]he plain meaning of the language of the [PWL] makes it clear that it was intended to apply to all agencies that receive public monies under the administration of the Commonwealth' which specifically includes instances where a defendant is 'a recipient of Medicaid funding[.]'" *Gloukhova*, 2022 WL 16722314, at \*4 (quoting *Denton*, 739 A.2d at 576). Notably, the *Denton* approach has the backing of Pennsylvania's Superior Court which has reiterated its support in more recent decisions. *See Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 475 n.8 (Pa. Super. 2017); *Harrison v. Health Network Lab'ys Ltd. Partnerships*, No. 365 EDA 2018, 2018 WL 6520982, at \*4 n.6 (Pa. Super. 2018) (unpublished opinion); *see also Romer v. MHM Health Pros.*, No. 1:20-CV-1275, 2020 WL 6747418, at \*4 (M.D. Pa. Nov. 17, 2020) (adopting the *Denton* approach, in part, "[b]ecause Pennsylvania's intermediate appellate court decisions are strong indicators of how the Pennsylvania Supreme Court would rule.").

The second approach, or *Cohen* approach, places the onus on legislative intent. Under the *Cohen* approach, the words "funded by or through" was not intended to be so broadly construed as to bring within the PWL's ambit any doctor, nursing home, hospital, or home healthcare provider "whose medical expenses are reimbursed by Medicaid." *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521, 1526 (E.D. Pa. 1991). Instead, the court in *Cohen* offered the following:

> In the Whistleblower Law, the use of the words "funded by or through" suggest a specifically appropriated amount of State funds to a public body. The language "funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body" was intended by the legislature to be limited to monies which were appropriated by the legislature for the purpose of aiding "public bodies" in pursuit of their public goals. This language was obviously

not intended to make an individual or corporation a "public body" solely on the
basis that monies were received by it from the state as reimbursement for services
rendered.

*Id.* at 1527.

The *Glouchkov* Court found the *Denton* approach more convincing and truer to the plain

text of the statute.  For much of the same analysis, this Court agrees.  Accordingly, the Court

finds that Ideal Concepts is an employer within the meaning of the PWL because it receives

Medicare and/or Medicaid funding.

*2. Whether Smith has Sufficiently Alleged Wrongdoing, Within the Meaning of the PWL,*

*on the Part of Ideal Concepts*

Smith cites three instances of wrongdoing: 1) the access of PHI while outside of the

United States in violation of CMS regulations; 2) violation of the WARN Act; and 3) the

fraudulent classification of Ideal Concept employees as Allentown residents to obtain a tax

credit.  Under the statute, "wrongdoing" is "[a] violation which is not of a merely technical or

minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or

regulation or of a code of conduct or ethics designed to protect the interest of the public or the

employer."  43 P.S. § 1422.

Regarding the first alleged instance of wrongdoing, the Court reaches the same impasse

as the FCA retaliation claim.  Smith notes violations of CMS regulations and the unlawful access

of PHI work but does not cite which specific regulations Ideal Concepts is violating.  Without

that specificity, the Court is unable to discern whether such violations are of "merely a technical

or minimal nature" or otherwise within the PWL's definition of wrongdoing.  *See Sukenik v.*

*Twp. of Elizabeth*, 131 A.3d 550, 555–56 (Pa. Commw. 2016) (noting that the underlying report

"must provide information that is sufficient to identify the law allegedly violated; reports of

vague or subjectively wrong conduct are not considered wrongdoing under the Whistleblower

Law.")

With regard to the WARN Act violation, Smith avers that at a January 2023 executive

meeting, he was told that Ideal Concepts planned to lay off more than fifty (50) employees

without notice.  Smith argues that such a measure violates the WARN Act and thus constitutes

wrongdoing under the PWL.  For its part, Ideal Concepts argues that this act does not constitute

wrongdoing because the "WARN Act is not a statute or regulation that Ideal Concepts is charged

to enforce or one that deals with the internal administration of Ideal Concepts."  Def.'s Mot. at

16.  However, "'wrongdoing' includes not only violations of statutes or regulations that are 'of

the type that the employer is charged to enforce,' but violations of any federal or state statute or

regulation, other than violations that are 'of a merely technical or minimal nature.'"

*Golaschevsky v. Com., Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998) (quoting 43 P.S. §

1422).  Thus, a violation of the WARN Act constitutes wrongdoing.  For the same reason, the

unlawful and fraudulent tax classification constitutes wrongdoing.

Accordingly, Smith has sufficiently alleged wrongdoing on the part of Ideal Concepts

within the meaning of the PWL.

*3.      Whether Smith Sufficiently Alleged a Causal Connection Between his*

*Complaints and Subsequent Termination*

Under the PWL, there must exist a causal connection between the employee's protected

conduct and the employer's discriminatory act.  This must be demonstrated "by concrete facts or

surrounding circumstances that the report of wrongdoing or waste led to the plaintiff's dismissal,

such as that there was specific direction or information received not to file the report or that there

would be adverse consequences because the report was filed."  *Id.* at 759 (quoting *Gray v. Hafer*,

651 A.2d 221, 225 (Pa. Commw. 1994).  Here, Smith made weekly complaints of the unlawful

conduct from early January until he was ultimately terminated on January 27th.  For the purposes

of the instant motion, this unusually close temporal proximity, combined with Smith's

consistently "excellent" job performance rating prior to termination, is sufficient to establish

causation.  Am. Compl. ¶ 12.

        For the above noted reasons, Smith has sufficiently stated a claim arising under the PWL

with regard to his reports for WARN Act violations and the fraudulent classification of Ideal

Concept employees as Allentown residents to obtain a tax credit.  Accordingly, the Motion to

Dismiss Count II is denied.

        **D. Public Policy Wrongful Termination**

        Finally, Smith alleges that his termination violated "the well-established public policy of

the Commonwealth of Pennsylvania that employers are prohibited from discharging an employee

for his refusal to commit a crime or partake in the employer's unlawful actions."  Am. Compl. ¶

45.  As noted, the public policy exception to the at-will employment doctrine "may be applied

under narrowly limited circumstances where (1) an employer requires an employee to commit a

crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) a

statute prohibits discharge."  *Denton*, 739 A.2d at 577.  While the above theory invokes just the

first exception, Smith's response to the instant motion seemingly invokes all three.

        The pleadings do not support a claim falling within the first two exceptions.  The

Amended Complaint is devoid of any assertion that Ideal Concepts required Smith to commit a

crime.  The purportedly unlawful acts were done by others.  Smith does not allege that he was

required to lay off employees in violation of the WARN Act or file fraudulent tax paperwork to

secure the tax credit.  Moreover, Pequeno and Jolla accessed the PHI outside of the United

States, not Smith.  Nor does Smith identify a statutory duty he was prevented from complying

with.   However, the Pennsylvania Superior Court has held that the violation of the PWL falls

within the third public policy exception.  *Denton*, 739 A.2d at 577.  Since Smith has successfully

pleaded a claim arising under the PWL under the analysis *supra*, the Court declines to dismiss

the public policy claim for wrongful termination.

## V.    CONCLUSION

The Court grants Ideal Concepts' Motion to Dismiss Count I because Smith has failed to

plead any underlying FCA violation.  The Court overrules Ideal Concepts' Motion to Dismiss

Counts II and III because Smith has sufficiently pled claims arising under the Pennsylvania

Whistleblower Law and Pennsylvania's Common Law Wrongful Discharge.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge